IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 11-246
)
DAMIEN CALDWELL )

O P I N I O N

DIAMOND, D.J.

On October 27, 2011, a federal grand jury returned a one-count indictment charging Damien Caldwell ("defendant") with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e)(1).

Currently pending before the court is defendant's pretrial motion to suppress evidence and the government's response in opposition to defendant's motion. A suppression hearing was held on March 26, 2012, and defendant's motion now is ripe for adjudication. For the following reasons, the motion will be denied.

At the hearing, Detective Michael Burford of the City of Pittsburgh Police Department testified as to the incident that occurred in the early morning hours of October 9, 2009, which resulted in the pending charge against defendant. Burford's testimony, which the court finds wholly credible, briefly is summarized as follows.

At approximately 3:00 a.m. on October 9, 2009, Burford was on duty as a patrol officer in Zone 5 of the City of Pittsburgh conducting a foot patrol in the parking lots surrounding Trappers nightclub on Hamilton Avenue. The area surrounding the nightclub had been a problem area for criminal activity, including multiple shootings and several homicides, as well as near nightly vehicle break-ins.

While patrolling the parking lots, Burford's partner, Officer Nino, spotted a firearm in plain view on the floor of a black Audi. Burford also observed the firearm protruding from under the front passenger seat. The officers continued their patrol of the lot before proceeding back to their patrol wagon where they ran the license plates on the Audi. The officers found the Audi to be registered to a Delmar Kirk who they also discovered had a permit to carry a firearm.

At approximately 3:30 a.m., as the nightclub was closing, the officers observed the same Audi traveling westbound on Hamilton Avenue with a passenger in the front seat and two passengers in the back. The officers followed the Audi as it turned right onto East Liberty Boulevard, then left onto Frankstown Road, where it pulled into a Sunoco station, another known problem area. The Audi went into the parking lot toward the gas pumps, which were occupied. The Audi then went into reverse towards the officers' patrol wagon, which had pulled in behind it. The Audi backed into the patrol wagon, then proceeded forward a few feet before stopping.

Burford observed the front-seat passenger, later identified as defendant, turn and look at the patrol wagon then motion to the driver to "go" by pointing forward. Burford radioed his supervisor that they had been involved in a collision, then he and Nino exited the patrol wagon and approached the vehicle, Nino on the driver's side and Burford on the passenger side.

While approaching the vehicle, Burford saw defendant moving around and appearing to lift his body upward, as if putting something into his waistband. The occupants of the vehicle were asked to show their hands. Defendant, however, did not put his hands in the air or on the dashboard, but instead was observed by Burford to place his hands towards his waist area. Burford ordered defendant out of the vehicle. As defendant opened the door and exited the vehicle, his hands again moved towards his waist. As Burford reached out and raised defendant's arms, defendant started to turn towards Burford, at which point Burford pushed defendant against the vehicle and spread his arms across the roof. Officer Kosko, who had arrived by this time as back-up, held defendant against the vehicle while Burford began a pat-down search. During the pat-down search, Burford felt a firearm in defendant's waistband and retrieved a Taurus 9 mm pistol.

Defendant seeks suppression of the firearm seized from his waistband on the grounds that the officers lacked reasonable suspicion for a pat-down search. Based on the evidence adduced at the hearing, the court finds defendant's argument to be without merit.

In Terry v. Ohio, 392 U.S. 1, 30 (1968), the United States Supreme Court held that a warrantless seizure based on less than probable cause can be constitutionally permissible "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person with whom he is dealing may be armed and presently dangerous ...." Under those circumstances, the officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Id.

In outlining the contours of a permissible Terry-stop, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Yamba, 506 F.3d 251, 255 (3d Cir. 2007) quoting Terry, 392 U.S. at 27. "The police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21. In making this determination, "the court must view the circumstances surrounding the stop in their entirety, giving due weight to the experience of the officers." Yamba, 506 F.3d at 255 quoting United States v. Rickus, 737 F.2d 360, 365 (3d Cir.1984).

Here, Burford was able to identify a number of specific and articulable facts which justified the pat-down search of defendant

AO 72
(Rev. 8/82)

for a weapon. First, Burford was aware that there was a firearm in the vehicle. Both Burford and Nino previously had observed a firearm located under the front passenger seat in the Audi, the seat now occupied by defendant, and, although the driver of the vehicle had a license to carry a firearm, the weapon was not under the driver's seat and could not have slid from one side of the vehicle to the other because of the gear shift and the center consol. In addition, both the nightclub and the Sunoco station were high crime areas known to Burford as being the location of frequent criminal activity including shootings and homicides.

Burford's observations of defendant after the collision also also were sufficient to have given rise to a reasonable suspicion that defendant might have been armed and dangerous. Immediately after the collision, Burford observed defendant appear to yell at the driver and to motion with his hands that he should drive forward. Burford then observed defendant make some furtive movements as he began to move around and appeared to lift his body upward, as if putting something into his waistband. Defendant then failed to comply with several requests that he show his hands and instead continued to fidget around his waist. When he was asked to exit the vehicle, defendant again moved his hands toward his waist and even began to turn towards Burford when Burford attempted to raise defendant's arms. Viewing these circumstances in their entirety, Burford was justified in believing defendant may have been armed and dangerous and a protective pat-down of defendant for a weapon clearly was warranted for officer safety.

At the hearing, defendant argued that the "furtive movements" testified to by Burford were insufficient to give rise to a reasonable suspicion. In particular, defendant argued that Burford's view of defendant inside the vehicle would have been obstructed by tinted windows, window mesh and the back seat passenger. However, Burford testified that the Sunoco station was very well-lit and that the lights of the patrol wagon were shining directly into the Audi and that his sight was not obstructed.

Defendant's argument that Burford's testimony regarding the furtive movements was inconsistent also is not well-taken. Although Burford testified at one point that defendant had placed his hands on his stomach and at another point that defendant was fidgeting, this testimony does not negate a reasonable suspicion that defendant may have been armed. Even if defendant had at one point placed his hands on his stomach, he still was not complying with Burford's instruction to show his hands.

Finally, the fact that the driver of the Audi had a permit to carry a weapon does not alter the equation. The weapon previously had been observed on the passenger side of the vehicle in a location where it could not have accidentally migrated from the driver's side, and, in any event, it would not matter whose weapon it was if defendant had access to it. The officers were aware that they were in a high-crime area and that a firearm was present in the vehicle. Based on the totality of the circumstances, the court is satisfied that a pat-down search of defendant for a weapon was more than justified.

Accordingly, for the foregoing reasons, defendant's motion to suppress the firearm seized during the lawful pat-down search will be denied.

An appropriate order will follow.

                                             */s/ Gustave Diamond*
                                             Gustave Diamond
                                             United States District Judge

Date: April 25, 2012

cc:  Charles A. Eberle
     Assistant U.S. Attorney

     Thomas Livingston
     Assistant Federal Public Defender